**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID EBERSOLE,** | : | **Civ. No. 1:26-CV-831** |
| **Plaintiff,** | : | |
| | : | **(Judge Wilson)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANGELINA KATALINA, et al.,** | : | |
| **Defendants.** | : | |

# REPORT AND RECOMMENDATION

## I. Introduction

"All happy families are alike: each unhappy family is unhappy in its own way." Leo Tolstoy, Anna Karenina.

Tolstoy's observations regarding the essential nature of domestic discord are a fitting metaphor for the instant case, a *pro se* lawsuit brought by David Ebersole, a disappointed state court domestic relations litigant. Mr. Ebersole is plainly unhappy in his own way as a result of domestic strife which has spilled over into the state legal system. His unhappiness now manifests itself in a lawsuit brought against virtually every other participant in this legal process. These defendants have now moved to dismiss this amended complaint. (Docs. 15, 24, 35, 41, 47). Several of these motions are now fully briefed and ripe for resolution. (Docs. 15, 24, 35).While we acknowledge the upset that has led the plaintiff to file this case, the simple truth

is that he cannot assuage his unhappiness at the progress of the state court domestic relations litigation through a federal civil rights lawsuit. Therefore, we recommend that these ripe motions to dismiss be granted.

## II. Factual Background and Procedural History

This *pro se* case arises out of contentious domestic relations litigation which has taken place in the Court of Common Pleas of Centre and Dauphin Counties. The operative pleading in this case is Ebersole's amended complaint. (Doc. 4). This amended complaint demands a great deal from the reader and assumes some pre-existing knowledge of the background and context of this domestic relations litigation. On this score, Ebersole's amended complaint calls to mind our prior observation that:

> [T]here is a Joycean quality to this pleading. Like some of the works of the great Irish literary figure, James Joyce, aspects of this pleading are written in a stream-of-consciousness style, one which presumes that the reader has a unique insight into the thoughts of the writer and can thus give meaning to seemingly unconnected ideas.

Lease v. Fishel, 712 F. Supp. 2d 359, 376 (M.D. Pa. 2010), aff'd, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010).

From what we can discern, Ebersole and a defendant, Angelina Katalina, are the parents of a child, A.L.E., who was diagnosed with autism spectrum disorder. In 2021 and 2022 state court orders were entered providing for joint custody of A.L.E. by Ebersole and Katalina. Katalina then moved from Dauphin to Centre County.

Sometime in 2025, and continuing through 2026, Ebersole and Katalina became embroiled in domestic relations litigation in both Centre and Dauphin Counties. It is a testament to the inscrutable nature of this complaint that we cannot discern the outcome of these proceedings beyond noting that they were marked by deep mutual recriminations.

While the amended complaint lacks coherence, several things in particular seem to have inspired Ebersole's ire. He was displeased with various court rulings; hence he has named state court judges as defendants in this lawsuit. He was upset that he briefly underwent drug testing by Children and Youth Services during these proceedings; thus, these agencies and some of their personnel are named as defendants. He is angered that Dr. Kristie Kauffman diagnosed A.L.E. as suffering from Oppositional Defiant Disorder and PTSD without speaking to him; therefore, she is also a defendant in this lawsuit.

Citing the general federal civil rights statute, 42 U.S.C. § 1983, Ebersole brings Due Process, Equal Protection, First Amendment and conspiracy claims against the defendants, along with apparent state law tort claims. The scope of his ire is then clearly shown through the sweeping scope of the complaint which names state judges, his estranged spouse, Children and Youth Services agencies and personnel, as well as the doctor who diagnosed A.L.E.'s Oppositional Defiant Disorder and PTSD as defendants. Ebersole's displeasure with the progress of this

litigation is further underscored by his prayer for relief, which demands compensatory and punitive damages along with sweeping injunctive relief that would, in effect, dictate the result of these state court cases. (Id.)

It is against this backdrop that the defendants have filed motions to dismiss this complaint. (Docs. 15, 24, 35, 41, 47). Three of these motions filed by Dr. Kauffman, the judicial defendants, and Dauphin County Children and Youth are now ripe for resolution. (Docs. 15, 24, 35). As discussed below, Mr. Ebersole's complaint encounters a cascading array of legal obstacles which combine to defeat the plaintiff's efforts to turn to this Court to cure his unhappiness with the progress of this state domestic relations litigation.

## III. Discussion

### A. Motion to Dismiss—Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell

> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

> District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the sufficiency of the

plaintiff's claims.

### B. These Ripe Motions to Dismiss Should Be Granted

In this case, the complaint lodged by Mr. Ebersole, while doubtless born of deep unhappiness concerning the course of his state domestic relations litigation, is profoundly flawed in multiple respects. The fatal deficiencies in this pleading, which compel dismissal of the complaint, are addressed separately below.

#### 1. The Amended Complaint Violates Rule 8

At the outset, dismissal of this complaint is warranted because Ebersole's amended complaint fails to comply with Rule 8's basic injunction that, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." It is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P. 8(a)(2), and that each averment be 'concise, and direct.'" Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007) (citing Fed.R.Civ.P. 8(e)(1)). Thus, when a complaint is "illegible or incomprehensible," id., or when a complaint "is not only of an unwieldy length, but it is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F.App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F.App'x 513 (3d Cir. 2008); Stephanatos,

236 F.App'x at 787; Scibelli, 219 F.App'x at 222.

Dismissal under Rule 8 is also proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]," Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, 441 F.App'x 109 (3d Cir. 2011). Similarly, dismissal is appropriate in "those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. at 110 (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995)) (quotations omitted); see also Tillio v. Northland Grp. Inc., 456 F. App'x 78, 79 (3d Cir. 2012).

These principles apply here and compel the dismissal of this latest complaint since this amended complaint, while prolix, is largely unintelligible and leaves "defendants having to guess what of the many things discussed constituted [a cause of action]." Binsack, 438 F. App'x at 158. Ebersole's efforts to avoid this outcome through the expedient of adding new and different facts in his response to the various motions to dismiss are unavailing. On this score: "[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" Save Long Beach Island v. U.S. Dep't of Com., 721 F. Supp. 3d 317, 335 (D.N.J. 2024) (quoting Olson v. Ako, 724 F. App'x 160, 166 (3d Cir. 2018)).

Simply put, unless or until Ebersole files a comprehensible complaint, this case cannot proceed forward.

### 2. The Rooker-Feldman Doctrine Applies Here

In addition, the plaintiff's complaint inevitably invites us to review, re-examine, and reverse various state court orders in state domestic relations cases. This we cannot do. To the extent that the plaintiff urges us, in effect, to sit as a state appellate court and vacate prior state court rulings, the complaint encounters an insurmountable threshold legal obstacle. As we have explained in the past:

> [W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.
>
> This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:
>
>> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker–Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker–Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521–22; see also Lance v. Dennis, 546 U.S. 459, ——, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker–Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d Cir.2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir.2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir.2010) (Rooker–Feldman doctrine operates as a

> jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F.Supp.2d 483, 487 (D.Del.2007); Rose v. County of York, No. 05–5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007); Logan v. Lillie, 965 F.Supp. 695, 696 (E.D.Pa.1997) aff'd, 142 F.3d 428 (3d Cir.1998); Behr v. Snider, 900 F.Supp. 719, 721 (E.D.Pa.1995).

Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug. 1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013).

Simply put, under the Rooker-Feldman doctrine the plaintiff is not entitled to relief which would necessarily imply the invalidity of at least some state court orders. Ebersole cannot overcome this bar by asserting that the state court orders he challenges are somehow void or illegitimate. The determination of the validity of a state court order in a pending state case is a task for the state courts to decide. The plaintiff cannot invite us to serve as some form of *ad hoc* state appellate court ruling on the legitimacy of state court orders. Since this is precisely what the plaintiff urges us to do in his pleading, this complaint fails as a matter of law and should be dismissed.

### 3. The Younger Abstention Doctrine Also Applies Here.

Beyond inviting us to set aside orders previously entered in the state court litigation, the plaintiff's complaint also seems to urge us to reach out prospectively insisting that we should dictate the future course of the litigation by enjoining the

state courts from taking any further action that displeases the plaintiff in this domestic relations litigation. To the extent that the plaintiff invites us to enjoin future enforcement of state court orders in a pending domestic relations case, this *pro se* pleading runs afoul of another settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009) (citing Younger v. Harris, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances")).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier,

> the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with ongoing state cases. Lui, 369 F.3d 319; Zahl v. Harper, 282 F.3d 204 (3d Cir.2002). Indeed, the Court of Appeals has expressly applied Younger abstention to state court domestic relations litigation, holding that: "This is precisely the type of case suited to Younger abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system." Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir. 2010).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present. First, it is evident that there are state proceedings in this case. Second, it is also apparent that those proceedings afford the plaintiffs a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249–50

(3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since the state case involves domestic relations matters, an issue of paramount importance to the state. See Lazaridis, 591 F.3d at 671. Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. However, given the important state interest in enforcement of its domestic relations rulings and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this complaint.

### 4. The Anti-Injunction Act Applies Here.

Additionally, as we have noted, in this *pro se* complaint the plaintiff seeks an extraordinary form of injunctive relief in that he invites us to enjoin pending state court litigation and prescribe the manner in which the state courts must address his concerns in the future. This prayer for relief encounters another immediate statutory hurdle—the Anti-Injunction Act. As the court of appeals has aptly observed:

> That statute reads as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283.
>
> The general rule is thus that "an injunction against execution or any other proceeding to enforce a state judgment is forbidden as well as one against the prosecution of state litigation to obtain a judgment." Jos. L. Muscarelle, Inc. v. Cent. Iron Mfg. Co., 328 F.2d 791, 793 (3d

> Cir. 1964). And while there are three statutorily prescribed exceptions, those exceptions "are to be construed narrowly," In re Diet Drugs, 282 F.3d 220, 233 (3d Cir. 2002), the practical effect of which is that the A-IA "prohibits most federal court injunctions staying state court proceedings," In re Prudential Ins. Co. of Am. Sales Pracs. Litig., 314 F.3d 99, 103 (3d Cir. 2002).

Norton v. Adams, No. 25-2361, 2025 WL 2231797, at *2 (3d Cir. Aug. 1, 2025).

The United States Supreme Court has underscored for us the central role which the Anti-Injunction Act plays in defining the comity owed to state courts in our federal system, explaining that:

> Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 297, 90 S. Ct. 1739, 1748, 26 L. Ed. 2d 234 (1970).

On occasion, litigants in state domestic relations cases have turned to the federal courts seeking to enjoin these state proceedings. This litigation has taken many different forms over time, but in light of the statutory and prudential limits set on the exercise of federal courts when it comes to enjoining state domestic relations proceedings, these efforts have routinely encountered the same fate, rejection by the courts. Thus, a rising tide of caselaw has found that the Anti-Injunction Act bars

attempts to enjoin pending state domestic relations cases like these proceedings.[1]

Nonetheless, we are reminded that the Anti-Injunction Act should not be applied in a reflexive or categorical fashion to bar state court injunctions. Norton v. Adams, No. 25-2361, 2025 WL 2231797, at *3 (3d Cir. Aug. 1, 2025). Rather, we must individually assess whether the plaintiffs' claims fall within any of the three narrowly construed statutory exceptions to the Act. Id. at *2. Having conducted this individualized examination, we find that the plaintiff cannot avail himself of any of these narrowly crafted exceptions to the rule forbidding federal injunctions of state court proceedings.

At the outset, it is clear that the Act's third exception—which allows this court to enjoin state proceedings when necessary "to protect or effectuate its judgments" 28 U.S.C. § 2283—has no application in this case. This exception is plainly inapposite since we have entered no judgments in favor of the plaintiff which need protection through injunctive relief.

Likewise, upon reflection, the plaintiff cannot rely on the first narrow exception to the Anti-Injunction Act which allows federal courts to enjoin state legal

[1] Reid v. Luna, No. 23-CV-4818, 2023 WL 8720666, at *1 (E.D. Pa. Dec. 18, 2023); Bonawitz v. Fosko, No. 3:CV-14-0783, 2014 WL 1745890, at *2 (M.D. Pa. Apr. 30, 2014); Steinbronn v. City of Philadelphia, No. CIV. A. 92-3744, 1992 WL 328923, at *2 (E.D. Pa. Oct. 27, 1992).

proceedings when expressly authorized by an Act of Congress. On this score, it bears repeating that, essentially, the plaintiff invites us under the federal civil rights statute, 42 U.S.C. § 1983, to enjoin a state judge to rule in his favor in specific ways in his case. As a § 1983 injunction targeting a state court, this claim is not "expressly authorized by Act of Congress." Quite the contrary, longstanding precedent, and the plain language of § 1983 specifically caution against such injunctions.

In the first instance:

> The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts. See Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); Forrester v. White, 484 U.S. 219, 225–27, 108 S.Ct. 538, 543–44, 98 L.Ed.2d 555 (1988); Stump v. Sparkman, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978).

Gallas v. Supreme Ct. of Pennsylvania, 211 F.3d 760, 768–69 (3d Cir. 2000).

Moreover, this longstanding judicial immunity from liability under § 1983 for damages claims has also been extended by Congress to claims for injunctive relief which target state judges. By its terms this seminal civil rights statute largely forbids such claims, stating that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's*

> *judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. § 1983 (emphasis added).

In this case, notwithstanding the plaintiff's sweeping allegations of systematic abuse by the courts, the plaintiff simply has not alleged well pleaded facts which would support a finding that a declaratory decree was violated or that declaratory relief is unavailable. Rather, it seems clear that the plaintiff has avenues of declaratory relief available to him through the state court system. Therefore, Ebersole has not made the exacting showing necessary to fall within this narrowly construed exception to the Anti-Injunction Act.

Finally, it cannot be said in this case that the plaintiff may avail himself of the final exception to the Anti-Injunction Act's prohibition against enjoining state court proceedings, an exception that allows federal courts to enjoin state cases where necessary in aid of its jurisdiction. This exception is unavailable to the plaintiff because his legal claims fail on their merits for a host of reasons.

**5. <u>The Plaintiff May Not Sue a Private Physician Under § 1983.</u>**

Beyond these concerns, Ebersole's federal civil rights complaint against Dr. Kauffman is substantively flawed in yet another crucial respect. Stripped to its essence, the plaintiff's complaint attempts to bring federal civil rights claims against a private physician based upon her diagnosis of his child. To the extent that the plaintiff seeks to sue a private party like the doctor he fundamentally misconstrues

the reach of the federal civil rights statute upon which he relies, 42 U.S.C. § 1983.

It is well established that § 1983 does not, by its own force, create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate and pre-existing legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg Univ., 893 F.Supp. 409, 416 (M.D. Pa. 1995), aff'd, 91 F.3d 122 (3d Cir. 1996) (emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendants were acting under color of law when that defendant allegedly violated the plaintiffs' rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983

since the statute typically requires a showing that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

In the absence of well-pleaded facts revealing that the doctor was acting in concert with state officials to violate Ebersole's rights—something that is notably lacking here—his claim also fails as a matter of law and should be dismissed.

### 6. The Judges Named in the Complaint are Immune from Liability.

Additionally, Ebersole's amended complaint sues two state court judges for judicial acts; namely, presiding over the plaintiff's state domestics relations cases. This claim also fails because the state court judges who presided over these domestic relations cases are immune from civil liability in this case. Thus, to the extent that the plaintiff seeks in this complaint to hold these judges personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon prior civil cases, it is well settled that the judges are individually cloaked with immunity from liability.

The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427

(1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir.1986) (parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Ebersole from maintaining this civil action against the judges named in this complaint since the judges are entitled to judicial immunity for their actions in these prior proceedings and are absolutely immune from personal liability for any judicial acts. See, e.g., Arsad v. Means, 365 F. App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in

> nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09–922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010), aff'd, 447 F. App'x 397 (3d Cir. 2011). As the Third Circuit has further explained, "[a] judicial officer in the performance of his or her duties has absolute immunity from suit. Simply put, '[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007) (quoting Stump v. Sparkman, 435 U.S. 349, 356–57 (1978) (citations omitted)). Since the gravamen of Ebersole's complaint against these judges relates to their judicial actions, the plaintiff's claims against the judicial defendants fail as a matter of law.

### 7. Ebersole's Damages Claims Against Children and Youth Services Fail

Ebersole also names Children and Youth Services agencies in Centre and Dauphin Counties as defendants seeking damages from these agencies. This claim warrants only brief consideration because it encounters a Constitutional obstacle. The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens

of another state, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Although the text of the Amendment seems only to restrict the Article III diversity jurisdiction of federal courts, the United States Supreme Court has explained that it has "understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996) (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991)). What that "presupposition" means is two-fold: "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amendable to the suit of an individual without its consent.'" Id. (quoting Hans v. Louisiana, 134 U.S. 1, 13 (1890)).

Pennsylvania has not consented to be sued in federal court. See 42 Pa. Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); see also 1 Pa. Cons. Stat. Ann. § 2310 (under Pennsylvania law, the Commonwealth enjoys sovereign immunity unless the General Assembly "specifically waives sovereign immunity."); Pa. Const. art. I, § 11 (providing that the Commonwealth may be sued only "in such manner, in such courts and in such cases as the Legislature may by law direct."). Although the Commonwealth has expressly waived its sovereign immunity from suit in state court in nine specific areas, it has not waived its

immunity from being sued in federal court for any reason. See 42 Pa. Cons. Stat. Ann. § 8521(b); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223, 227 (3d Cir. 2000) (noting that the Commonwealth “has waived immunity only for certain specified tort claims in suits for damages in state court,” while at the same time has emphasized that nothing in the waiver statute shall be construed to waive immunity from suit in Federal courts). Accordingly, the Third Circuit Court of Appeals has long made clear that Pennsylvania has not consented to be sued in federal court. See id.; Wheeling & Lake Erie Ry. v. Public Util. Comm'n, 141 F.3d 88, 91 (3d Cir. 1998); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).

In this case, CYS is an arm of the Commonwealth of Pennsylvania, and the Third Circuit Court of Appeals has held that “Pennsylvania's domestic relations agencies, such as Children and Youth Services, are defined by statute as arms of the state courts and institutions of state government,” and thus subject to immunity under the Eleventh Amendment. Wattie-Bey v. Attorney General's Office, 424 F. App'x 95, 98 and n.2 (3d Cir. 2011); see also Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. Mar. 22, 2009); Van Tassel v. Lawrence County Domestic Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009).

### 8. **Ebersole’s Conspiracy Claim Fails**

Finally, Ebersole’s amended complaint appears to try to stitch together

disparate and diverse events through the rubric of labeling all these events as part of some amorphous conspiracy. However, these conspiracy claims are bereft of well-pleaded facts demonstrating some concerted agreement to violate his rights.

This cursory form of pleading will not do.

Rather, Ebersole's largely undefined civil conspiracy claims fail as a matter of law. These conspiracy claims—which consist of nothing more than vague assertions and conclusory labels—are legally insufficient on their face. On this score, the legal standards that govern the sufficiency of civil conspiracy claims are well-settled.

> [I]n order to plead a civil rights action based upon a claim of conspiracy, a plaintiff must plead allegations that are:
>
> > supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.
>
> Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). Quite the contrary, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a 'meeting of the minds') (further

> citation omitted). This holding remains good law following Twombly and Iqbal, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' Twombly, 550 U.S. at 556, 127 S. Ct. 1955, 167 L.Ed.2d 929." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) cert. denied, —– U.S. ——, 131 S. Ct. 1798, 179 L.Ed.2d 655 (U.S. 2011). We are mindful of these pleading requirements, which are considered together with the standards of pleading applicable to all civil actions in federal court as defined in Twombly and Iqbal, supra.

Johnson v. Davis, No. 3:23-CV-762, 2023 WL 9052027, at *8 (M.D. Pa. Sept. 12, 2023), report and recommendation adopted sub nom. Johnson v. Blue Shirt Davis, No. 3:23-CV-00762, 2023 WL 9052009 (M.D. Pa. Dec. 29, 2023). Judged by these standards, Ebersole's conspiracy claims are utterly deficient. These claims rely upon mere surmise and suspicion and rest upon no more than labels. As such, they fail as a matter of law and should be dismissed.

**9. Any Supplemental State Law Claims Should Be Dismissed.**

While Ebersole's amended complaint seems to rely upon federal claims which we find fail as a matter of law, the dismissal of these federal claims dictates the appropriate course we should follow in addressing the ancillary state law claims that the plaintiff may wish to pursue.

In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal at the outset of litigation, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3)

("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976)) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

The basic tenet that we should refrain from needlessly asserting jurisdiction over what are essentially state law claims applies with particular force here where we are asked to re-examine and potentially interfere with prior state court

proceedings in the field of domestic relations. We should approach such issues with great caution given our lack of jurisdiction in this field since:

> The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the states, and not to the laws of the United States," Ex parte Burrus, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Daniels v. Cynkin, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), aff'd, 597 F. App'x 704 (3d Cir. 2015).

Therefore, in the exercise of our discretion, we should decline to assert supplemental jurisdiction over potential ancillary state law domestic relations claims in this case where all potential federal claims brought before us fail as a matter of law. See Payne v. Doe #1, No. 1:22-CV-1876, 2023 WL 3493315, at *5–6 (M.D. Pa. Mar. 27, 2023), report and recommendation adopted, No. 1:22-CV-1876, 2023 WL 3480895 (M.D. Pa. May 16, 2023).

**10. The Complaint Should Be Dismissed Without Prejudice**

While the complaint, as written, is deficient in numerous ways, we recognize that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v.

Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the plaintiff's complaint is, on its face, flawed since these *pro se* pleadings do not contain sufficient factual recitals to state a claim upon which relief may be granted. Therefore, the complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Nonetheless, acting out of an abundance of caution, we recommend that the plaintiff be given leave to amend this complaint in order to endeavor to state a claim upon which relief may be granted, provided he acts promptly.

## IV. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the currently ripe motions to dismiss, (Docs. 15, 24, 35), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of October 2026.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge